NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|   |   |   |
|---|---|---|
| GARY NORGAARD, as Assignee of Crown Holdings, Inc. and Crown Financial Group Inc, | : : : : | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | : : | **OPINION** |
| v. | : : | Civil Action No. 06-cv-00316 (DMC) |
| POLYMET MINING CORP, | : : |   |
| Defendants. | : : |   |

<u>DENNIS M. CAVANAUGH, U.S.D.J.</u>:

      This matter comes before the Court upon motion by Plaintiff Norgaard, as Assignee for the Benefit of Creditors of Crown Financial Holdings, Inc. and Crown Financial Group, Inc. ("Norgaard"), with cross motion by Defendant PolyMet Mining Corp. ("PolyMet"), each party asserting that it is entitled to summary judgment pursuant to Rule 56(c). Pursuant to Rule 78 of the Federal Rules of Civil Procedure no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment are **denied**.

**I.    BACKGROUND[1]**

      Plaintiff became the Assignee for the benefit of the Creditors of Crown Financial Holdings

---

[1]The facts set forth in this Opinion are taken from the undisputed facts set forth in the parties' Rule 56.1 statements in Plaintiff's original motion for summary judgment and Defendant's opposition to Plaintiff's motion and own cross motion for summary judgment.

Inc. and Crown Financial Group, Inc. on October 4, 2005.  Crown Financial Group, Inc. ("Crown") was formerly known as M..H. Meyerson & Co.("Meyerson") and on October 16, 2003, Meyerson changed its name to Crown Financial Group, Inc. As such, "Meyerson" was the named party to the contract at issue, as opposed to "Crown".

Plaintiff and Defendant agree that on or about November 1, 2000, Meyerson entered into a contract ("The Contract") for Meyerson to provide investment banking services to PolyMet in exchange for $25,000 and 450,000 PolyMet shares of common stock options at $0.54 Canadian dollars per share, exercisable up to and including November 1, 2005.  It is also undisputed that PolyMet sent a letter to Meyerson on May 3, 2001, terminating its consulting agreement with the company and requesting that all 450,000 share options granted in the agreement be cancelled and returned immediately.  (See Grannum Aff. Ex.13, attached to Pl.'s moving papers).

On May 31, 2001, Buck Andrews, the CFO of PolyMet sent a letter to Eugene Whitehouse of Meyerson summarizing the effects of the Meyerson termination.  The letter stated that the contract between Meyerson and PolyMet was cancelled, effective May 3, 2001; Meyerson is vested in 225,000 share purchase options in PolyMet and; all other share options, vested or non-vested, in PolyMet, are cancelled and returned to PolyMet. This letter was countersigned by Mr. Whitehouse on June 8, 2001.  (See Grannum Aff. Ex.14, attached to Pl.'s moving papers).

On August 26, 2005, Robert Thorton, of Crown Financial Group, Inc. called PolyMet seeking to exercise the options Crown believed it was entitled to pursuant to the subject contract.  Mr. Thorton called  PolyMet again on September 8 and September 9 of 2005 attempting to exercise the same options.  PolyMet responded to Plaintiff on September 15, 2005, asserting that the Meyerson options had expired and that they were not exercised in the manner required by the Stock Option

Plan under which the options were granted.

There is no dispute that as part of the Option Agreement between PolyMet and Meyerson, a copy of the Agreement was to be presented to PolyMet's transfer agent, together with a request that all or part of the Meyerson options be exercised and a certified check in the proper amount, the certificates for the appropriate number of shares of Common Stock be promptly issued. (See Contract ¶ 8, Pl. Rule 56.1 Statement of Material Facts ¶ 52, Df. Rule 56.1 Statement of Material Facts ¶ 12).

There is also no dispute that the relationship between Meyerson and PolyMet was entered into as a consulting agreement and that Meyerson be treated as an independent contractor, and not as an employee.

Other than the above mentioned undisputed facts, there are significant issues of material fact, outlined below in discussion, which preclude Plaintiff's motion and Defendant's cross-motion for summary judgment.

## II.  STANDARD OF REVIEW

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). The moving party bears the burden of showing that there is no genuine issue of fact. Id. "The burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." Id. The non-moving party "may

not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor. Fed. R. Civ. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "[U]nsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). However, "[i]n determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences - including issues of credibility - in favor of the nonmoving party." Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J. 2000) aff'd, 51 Fed. Appx. 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D.N.J. 1980)).

## III.   DISCUSSION

After carefully reviewing the record and papers submitted by both parties, this Court finds that there are significant issues of material fact, aside from contract interpretation, which preclude the grant of summary judgment to either party. Additionally, each party urges the Court to interpret the Contract according to its terms in their respective motions for summary judgment; this Court finds that both parties are in breach of separate contract terms.[2]

Forming the basis for this lawsuit is Plaintiff's contention that he is entitled, as Assignee for the Benefit of Creditors of Crown Financial Holdings, Inc., to the lost profit he sustained when

---

[2] Summary judgment may be entered when the Court is asked to interpret contractual clauses which are unambiguous, when the parties have opposing views as to what consequences flow from the contractual provisions. United States v. Bills, 639 F. Supp. at 829.

PolyMet prohibited Crown from exercising stock options Meyerson was granted according to the consulting agreement, which it could have in turn sold and made a profit of $989,567.85. (See Pl. Brief, p. 9).

Plaintiff also asserts that the granting of the options from PolyMet could not be tied to the successful performance of Meyerson to the terms of the contract, and as such, the options granted were irrevocable. (See Pl. Statement of Material Facts, ¶7). Defendant in turn argues that Meyerson failed to perform any consulting duties, so the contract fails due to lack of consideration as the $25,000 and the granting of the PolyMet options were given in consideration of investment banking services. (See Def. Statement of Material Facts, ¶ 6, Brief, p. 3).

The contract specifically states at ¶15, that either party may terminate the agreement at any time, however, legally vested options remain with Meyerson. Interpreting the contract on face value, this Court deems that the vested options belonged to Meyerson with the purchase option, but there is a significant issue of fact as to the expiration date of the subject options.

There is an issue of material fact as to the meaning of the May 31, 2001 letter. Plaintiff contends that the May 31, 2001 letter from PolyMet to Meyerson should be deemed the "amended contract". (See Pl. Statement of Material Facts, ¶¶ 19-20). Conversely, Defendant argues that the contract was terminated, effective May 3, 2001 and that the subject options expired within 90 days of the termination, and as such, no "amended contract" was ever entered into. (See Df. Statement of Material Facts, ¶¶10 and 21).

The interpretation of the May 31, 2001 letter, as to whether same is a termination agreement, or an amended contract is an issue of material fact and as such, cannot be determined by motion.

Further, Defendant contends that since the consulting agreement was terminated effective May 3, 2001, that the options had expired well before Crown attempted to exercise them, in August and September 2005, because the options must have expired 90 days after the consulting relationship ended between the companies. (See Df. Brief, p. 12).

Additionally, Defendant contends that even if the options had not yet expired, Plaintiff did not attempt to exercise the options according to the contract terms, and was thus prohibited from acquiring the options.  Specifically, Defendant states in its Statement of Material Facts, ¶12, "The Investment Banking Services Agreement states at ¶6 'when a copy hereof is presented to PolyMet's transfer agent, together with a request that all or part of the Meyerson options be exercised and a certified check in the proper amount, the certificates for the appropriate number of shares of Common Stock shall be promptly issued.'"

Crown, as successor to Meyerson, attempted to exercise the options by way of Robert Thorton, of Crown, telephoning an employee of PolyMet to notify the company that Crown wished to exercise the options. (See Df. Brief, p. 4, Pl.'s Opp. p. 22).

Plaintiff does not contest Defendant's assertion that it failed to properly exercise the options, and as such, Defendant's assertion is deemed admitted.[3]

Further, there is no issue of material fact that PolyMet made multiple public statements that Meyerson held the options long after the apparent expiration date which PolyMet is attempting to bind Meyerson. (See Pl. Opp. p.22).

---

[3]If one party presents facts which are not contested by the opposing party, the facts are deemed admitted. New West Urban Renewal v. Viacom, Inc., 230 F. Supp. 2d 568 (D.N.J. 2002).

Therefore, this Court finds that both Plaintiff, as assigned creditor of Crown, and Defendant breached the contract between the companies. Defendant breached the contract by conveying to the public that Meyerson owned the subject options to purchase the common stock. Plaintiff breached the contract by failing to proceed according to the contract terms in exercising the options. Further, there are issues of material fact as to the significance of the May 31, 2001 letter and the expiration date of the options granted to Meyerson via its agreement with PolyMet.

**IV.   CONCLUSION**

For the reasons stated, it is the finding of this Court that Plaintiff's motion and Defendant's cross-motion for summary judgment are **denied.** An appropriate Order accompanies this Opinion.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:           September   4  , 2007
Orig.:          Clerk
cc:             Counsel of Record
                The Honorable Mark Falk, U.S.M.J.
                File